IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

VINCENT DeROSA,                  )    CIVIL 15-00165 LEK-KSC
                                 )
          Plaintiff,             )
                                 )
     vs.                         )
                                 )
THE ASSOCIATION OF APARTMENT     )
OWNERS OF THE GOLF VILLAS;       )
CERTIFIED MANAGEMENT, INC.,      )
dba CERTIFIED HAWAII aka         )
ASSOCIA HAWAII; JOHN DOES 1-     )
100; JANE DOES 1-100; DOE        )
PARTNERSHIPS 1-100 AND DOE       )
ENTITIES 1-100,                  )
                                 )
          Defendants.            )
_____ )

**AMENDED ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

On March 9, 2016, Defendants the Association of
Apartment Owners of the Golf Villas ("AOAO") and Certified
Management, Inc., doing business as Certified Hawaii, now known
as Associa Hawaii ("Certified," collectively "Defendants"), filed
their Motion for Summary Judgment ("Motion").  [Dkt. no. 29.]
Plaintiff Vincent DeRosa ("Plaintiff") filed his memorandum in
opposition on March 28, 2016, and Defendants filed their reply on
April 4, 2016.  [Dkt. nos. 32, 36.]  This matter came on for
hearing on April 18, 2016.

On May 3, 2016, this Court issued an entering order
ruling on the Motion ("5/3/16 EO Ruling").  [Dkt. no. 43.]  The
instant Order supersedes the 5/3/16 EO Ruling.  After careful
consideration of the Motion, supporting and opposing memoranda,

and the arguments of counsel, Defendants' Motion is HEREBY

GRANTED IN PART AND DENIED IN PART.  Specifically, the Motion is

DENIED WITHOUT PREJUDICE as to Plaintiff's breach of contract

claim, and the Motion is GRANTED in all other respects.  As to

the remaining claims – breach of contract and the Haw. Rev. Stat.

§ 515-16(1) claim – any party who desires to file a motion for

summary judgment has leave to file by or before **May 31, 2016**.

## BACKGROUND

Plaintiff filed his Complaint on January 22, 2015 in

state court.  [Notice of Removal, filed 5/7/15 (dkt. no. 1),

Decl. of David R. Major ("Major Removal Decl."), Exh. A

(Complaint).]  Defendants removed the case based on federal

question jurisdiction.  [Notice of Removal at ¶ 2.]

The Complaint alleges that Plaintiff has a disability,

as that term is defined in the Americans with Disabilities Act

("ADA").  Plaintiff owns a pug named Jake, who is a certified

Emotional Support Animal ("ESA"), registered with the National

Service Animal Registry ("NSAR").  [Complaint at ¶¶ 8-10.]

Further, Plaintiff alleges that:

> "Jake" meets the ADA definition of a service dog.
> The Fair Housing Amendments Act of 1988, Section
> 504 of the Rehabilitation Act of 1973 and Title II
> of the ADA require property managers and landlords
> to make reasonable accommodations to permit a
> disabled handler to keep an ESA even when there is
> a policy explicitly prohibiting pets.

[Id. at ¶ 11.]

2

The following facts are undisputed.  Plaintiff previously owned a condominium unit at the Kapalua Golf Villas ("Golf Villas"), which is part of the Kapalua Resort, a master planned community.  [Defs.' Separate Concise Statement of Facts in Supp. of Motion ("Defs.' CSOF"), filed 3/9/16 (dkt. no. 30), at ¶¶ 1-2; Pltf.'s Separate Concise Statement of Facts in Supp. of Mem. in Opp. ("Pltf.'s CSOF"), filed 3/28/16 (dkt. no. 33), at ¶¶ 1-2.]  The Kapalua Resort is subject to a December 29, 1976 Declaration of Covenants and Restrictions, the applicable version of which was amended and restated, and recorded on September 30, 1987 ("Kapalua Declaration").  [Defs.' CSOF at ¶ 2; Pltf.'s CSOF at ¶ 2; Defs.' CSOF, Decl. of Alan Fleisch ("Fleisch Decl."),[1] Exh. B (Kapalua Decl.).]  The Golf Villas's Declaration of Horizontal Property Regime ("Golf Villas Declaration") states that it is subject to the Kapalua Declaration.  [Defs.' CSOF at ¶ 4; Pltf.'s CSOF at ¶ 4; Fleisch Decl., Exh. C (Golf Villas Decl.).]  The Kapalua Declaration therefore contains numerous covenants and restrictions that encumbered the title to Plaintiff's Golf Villas unit.  [Defs.' CSOF at ¶ 5; Pltf.'s CSOF at ¶ 5.]

The claims in this case arise from: the AOAO's refusal to grant Plaintiff an exception to what the AOAO asserts is a no-

---

[1] Alan Fleisch is the president of the AOAO, and its custodian of records.  [Fleisch Decl. at ¶¶ 1, 3.]

pets policy in the Golf Villas's governing documents; and alleged retaliation by the AOAO and its agent, Certified, for Plaintiff's opposition to a Golf Villas remediation project and for his filing of a disability discrimination complaint against the AOAO with the Hawai`i Civil Rights Commission ("HCRC") and the United States Department of Housing and Urban Development ("HUD").

Plaintiff's Complaint does not set forth his claims as numbered counts. He lists them in one paragraph:

> The actions and omissions of the AOAO and Certified constitute retaliation, bad faith, selective enforcement of the governing documents, negligence, gross negligence, breach of contract, breach of fiduciary duty, negligent and intentional emotional distress, prima facie tort, racketeering, and violations of [Haw. Rev. Stat.] §§ 515-16(1), 515-16(6), 514B-9, 514B-105, 514B-105 [sic] and [Haw. Admin. R.] §§ 12-46-301, 12-46-310(1) and 12-46-310(6).

[Complaint at ¶ 29.] The Complaint seeks the following relief: a declaratory judgment that Defendants violated § 515-16(1) and (6), § 12-46-301, and § 12-46-310(1) and (6); "[j]ust compensation including general, special, and punitive damages[;]" attorneys' fees and costs; and any other appropriate relief. [Id. at pg. 8.]

In the instant Motion, Defendants argue that all of Plaintiff's claims should be dismissed with prejudice or this Court should grant summary judgment in Defendants' favor.

**DISCUSSION**

I.    **Procedural Issues**

In his memorandum in opposition, Plaintiff asks that he be allowed to continue discovery, pursuant to Fed. R. Civ. P. 56(d), before this Court rules on the Motion.  [Mem. in Opp. at 2.]  In an April 13, 2016 entering order ("4/13/16 EO"), this Court denied Plaintiff's request because he failed to follow the requirements for a Rule 56(d) request.  [Dkt. no. 37.]

This Court also notes that Plaintiff failed to include a declaration or affidavit authenticating his exhibits.  Although Plaintiff submitted a declaration, [Decl. of Vincent DeRosa ("Plaintiff Declaration"), filed 3/28/16 (dkt. no. 34),] it is not sufficient to authenticate any of his exhibits.  In the 4/13/16 EO, this Court informed the parties that it would not consider any exhibits that were not properly authenticated. However, out of fairness, this Court recognizes that: several of Plaintiff's exhibits are documents that are included among Defendants' exhibits; some of Plaintiff's other exhibits are described – although not specifically identified according to exhibit number – in his declaration; and still more of Plaintiff's exhibits could have been authenticated by Plaintiff because they are correspondence either from him or to him.

This Court does not condone Plaintiff's failure to follow the applicable rules, and this Court could rightly refuse

to take Plaintiff's exhibits into account because of the lack of authentication.  However, this Court, in its discretion, declines to strike Plaintiff's exhibits, and it has taken his exhibits into account in considering Defendants' Motion.  Even though this Court has considered Plaintiff's exhibits, they do not establish a genuine issue of material fact for trial.[2]  See Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

This Court now turns to the merits of the Motion.

## II. Claims Subject to Dismissal

Even though Defendants titled their motion "Motion for Summary Judgment," they argue that some of Plaintiff's claims should be dismissed because, based upon the allegations of the Complaint, those claims fail as a matter of law.  This Court will therefore apply the dismissal standards in considering those claims.  See Fed. R. Civ. P. 12(b)(6) ("failure to state a claim upon which relief can be granted"); Levitt v. Yelp! Inc., 765 F.3d 1123, 1135 (9th Cir. 2014) (stating that, in order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff's "factual allegations must suggest that the claim has at least a plausible

---

[2] This Court has found that there is a genuine issue of material fact for trial regarding Plaintiff's breach of contract claim, see infra Section IV.C, but that is because neither party presented evidence on that particular aspect of the claim.

chance of success" (alteration, citation, and internal quotation marks omitted)).

## A.  <u>Bad Faith</u>

Under Hawai`i law, the tort of bad faith is also known as breach of the duty of good faith and fair dealing.  Because this Court has supplemental jurisdiction over Plaintiffs' state law claims, it must apply Hawai`i substantive law to those claims.  <u>See</u> <u>Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC</u>, 632 F.3d 1056, 1060 (9th Cir. 2011).  This Court has recognized that:

> When interpreting state law, a federal court is bound by the decisions of a state's highest court. <u>Trishan Air, Inc. v. Fed. Ins. Co.</u>, 635 F.3d 422, 427 (9th Cir. 2011).  In the absence of a governing state decision, a federal court attempts to predict how the highest state court would decide the issue, using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance.  <u>Id.</u>; <u>see also</u> <u>Burlington Ins. Co. v. Oceanic Design & Constr., Inc.</u>, 383 F.3d 940, 944 (9th Cir. 2004) ("To the extent this case raises issues of first impression, our court, sitting in diversity, must use its best judgment to predict how the Hawai`i Supreme Court would decide the issue." (quotation and brackets omitted)).

<u>Evanston Ins. Co. v. Nagano</u>, 891 F. Supp. 2d 1179, 1189 (D. Hawai`i 2012) (some citations omitted).  This Court has stated:

> Hawai`i courts have recognized that "every contract contains an implied covenant of good faith and fair dealing that neither party will do anything that will deprive the other of the benefits of the agreement."  <u>Best Place, Inc. v. Penn Am. Ins. Co.</u>, 82 Hawai`i 120, 123-24, 920

P.2d 334, 337-38 (1996) (citations omitted).
"Good faith performance 'emphasizes faithfulness
to an agreed common purpose and consistency with
the justified expectations of the other party.'"
Hawaii Leasing v. Klein, 5 Haw. App. 450, 456, 698
P.2d 309, 313 (1985) (quoting Restatement (Second)
of Contracts § 205 cmt. a (1981)).  This district
court, however, has observed that:

> Hawai`i courts have not recognized a separate
> tort cause of action for bad faith or breach
> of the duty of good faith and fair dealing
> based upon any type of contract in any
> circumstances.  Moreover, in Francis v. Lee
> Enterprises, Inc., 89 Hawai`i 234, 971 P.2d
> 707, 711-12 (1999), the Hawai`i Supreme Court
> stressed the importance that claims of bad
> faith be limited to "the insurance context or
> situations involving special relationships
> characterized by elements of fiduciary
> responsibility, public interest, and
> adhesion."  The Hawai`i Supreme Court stated
> that the limitation on the tort of bad faith
> was important due to the fact that recovery
> in tort was very different from contractual
> remedies.  Id. at 712-13.  Accordingly, the
> Hawai`i Supreme Court stated that Hawai`i law
> will not allow a recovery in tort "in the
> absence of conduct that (1) violates a duty
> that is independently recognized by
> principles of tort law and (2) transcends the
> breach of the contract."  Id. at 717.

Sung v. Hamilton, 710 F. Supp. 2d 1036, 1050 (D.
Hawai`i 2010).

Flynn v. Marriott Ownership Resorts, Inc., No. CV 15-00394 LEK-

BMK, 2016 WL 843251, at *21-22 (D. Hawai`i Feb. 29, 2016).

The instant case does not arise from the insurance

context, nor is the relationship between Plaintiff and Defendants

the type of special relationship that supports a bad faith claim,

such as "an innkeeper, a common carrier, a lawyer, [or] a

doctor." See id. at *22 (quoting Best Place, 82 Hawai`i at 131, 920 P.2d at 345).   Although the Hawai`i Supreme Court has never expressly addressed whether it would recognize a bad faith claim in the context of the relationship between an apartment owner and the apartment owners' association, this Court predicts that the supreme court would decline to do so because of the lack of a special relationship.

This Court therefore CONCLUDES that Plaintiff's bad faith claim fails to state a claim upon which relief can be granted and must be DISMISSED.   Further, this Court CONCLUDES that the dismissal must be WITH PREJUDICE because it is not possible for Plaintiff to cure the defect in the bad faith claim by amendment.   See Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty., 708 F.3d 1109, 1118 (9th Cir. 2013) ("As a general rule, dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment." (brackets, citation, and internal quotation marks omitted)).   The Motion is GRANTED as to the bad faith claim.

**B.   Prima Facie Tort Claim**

Defendants next argue that Plaintiff's prima facie tort claim is not cognizable under Hawai`i law.   Plaintiff relies on Metzler Contracting Co. v. Stephens, Civil No. 07-00261 LEK, 2009 WL 1046666, at *5 (D. Hawai`i Apr. 17, 2009), in which this Court predicted that the Hawai`i Supreme Court would "recognize a

9

separate cause of action for prima facie tort under facts
virtually identical to" Giuliani v. Chuck, 1 Haw. App. 379, 620
P.2d 733 (Ct. App. 1980).  In Metzler, this Court pointed out
that, in Giuliani, the Hawai`i Intermediate Court of Appeals
("ICA") "did not recognize prima facie tort as an alternative to
another well-recognized cause of action."  2009 WL 1046666, at
*5.  Plaintiff argues that the Hawai`i Supreme Court would allow
him to pursue a prima facie tort claim in this case because, like
Giuliani, "Plaintiff does not assert the claim for prima facie
tort as an alternative to another well-recognized cause of
action."  [Mem. in Opp. at 16.]

        Plaintiff's argument is misplaced.  This Court again
predicts, for the reasons stated in Metzler, that the Hawai`i
Supreme Court would only recognize a prima facie tort claim in
cases with **facts** that are virtually identical to Giuliani.  See
Metzler, 2009 WL 1046666, at *5.  In Giuliani, the plaintiffs
entered into an agreement to purchase residential property from
the defendant.  They did not complete the sale because of
disputes regarding the sale documents, and the defendant's
attorney deemed the plaintiffs' deposit forfeited, alleging that
the plaintiffs breached the agreement.  The plaintiffs filed suit
to rescind the contract and to obtain the return of their
deposit.  Giuliani, 1 Haw. App. at 381, 620 P.2d at 735.  The ICA
held that "the amended complaint [was] sufficient to state a

cause of action for intentional harm to a property interest, a cognizable cause of action sounding in tort," but it was insufficient to allege any other cause of action. Id. at 386, 620 P.3d at 738 (citing Restatement, Second, Torts § 871).[3]  This Court cannot find that the facts of this case are virtually identical to Giuliani.  This Court therefore predicts that the Hawai`i Supreme Court would not recognize a prima facie tort claim under the facts of this case.

This Court CONCLUDES that Plaintiff's prima facie tort claim fails to state a claim upon which relief can be granted. Further, this Court CONCLUDES that it is not possible for Plaintiff to cure the defects in this claim by amendment. Accord Barber v. Ohana Military Communities, LLC, Civil No. 14-00217 HG-KSC, 2014 WL 3529766, at *13-14 (D. Hawai`i July 15, 2014) (concluding that the plaintiffs' prima facie tort claim was futile and dismissing the claim with prejudice because "[t]he circumstances of [the] case would not give rise to a prima facie tort claim").  The Motion is GRANTED insofar as the prima facie tort claim is DISMISSED WITH PREJUDICE.

---

[3] According to the ICA, the Restatement (Second) of Torts § 871 stated: "One who intentionally deprives another of his legally protected property interest or causes injury to the interest is subject to liability to the other if his conduct is generally culpable and not justifiable under the circumstances." Giuliani, 1 Haw. App. at 386, 620 P.2d at 738.

C.    __Selective Enforcement of Governing Documents__

Plaintiff cites Restatement (Third) of Property: Servitudes §§ 6.13 and 6.14 and Haw. Rev. Stat. §§ 514B-9 and 514B-10 as the legal authority for his claim alleging selective enforcement of the governing documents.  However, Plaintiff has not cited, nor is this Court aware of, any case in which the Hawai`i Supreme Court has adopted §§ 6.13 and 6.14 and recognized a cause of action for selective enforcement under those sections. Further, Plaintiff has not cited, nor is this Court aware of, any case in which the Hawai`i Supreme Court has recognized that an apartment owner may bring a selective enforcement claim pursuant to §§ 514B-9 and 514B-10.  Based upon this lack of precedent, this Court predicts that the Hawai`i Supreme Court would not recognize a cause of action for selective enforcement pursuant to these sections.

This Court CONCLUDES that Plaintiff's selective enforcement claim fails to state a claim upon which relief can be granted, and that it is not possible for Plaintiff to cure the defects in this claim by amendment.  The Motion is GRANTED insofar as the claim for selective enforcement of the governing documents is DISMISSED WITH PREJUDICE.

D.    __Breach of Fiduciary Duty__

Plaintiff argues that, based on Restatement (Third) of Property: Servitudes §§ 6.13 and 6.14, the board of directors of

12

an apartment owners' association owes a fiduciary duty to all members of the association, not just to the association itself. Plaintiff also argues that, in <u>Lee v. Puamana Community Ass'n</u>, 109 Hawai`i 561, 128 P.3d 874 (2006), the Hawai`i Supreme Court recognized that an owners' association owes a fiduciary duty to its members.

In <u>Lee</u>, the Hawai`i Supreme Court did state that "other courts have stated that nonuniform amendments and amendments that breach any fiduciary duties owed by an association to its members are invalid unless approved by every member whose interest is adversely affected." <u>Id.</u> at 571, 128 P.3d at 884 (citations omitted). However, the issue of whether an owners' association owes fiduciary duties to individual owners was not before the supreme court in <u>Lee</u>. It made that statement in discussing exceptions to the general rule that an "amendment made pursuant to a general amendment provision will be upheld." <u>Id.</u> at 570-71, 128 P.3d at 883-84. This district court has concluded that <u>Lee</u> did not recognize that an owners' association owes a fiduciary duty to its individual members. <u>See</u> <u>Baham v. Ass'n of Apartment Owners of Opua Hale Patio Homes</u>, Civ. No. 13-00669 HG-BMK, 2014 WL 2761744, at *9-10 (D. Hawai`i June 18, 2014). This Court agrees with the analysis in <u>Baham</u>, where the district court stated that the plaintiff's claims were "based on the AOAO's actions with respect to [his] failure to pay his maintenance

fees," and therefore his claims were "more akin to those brought by a lender against a borrower, a relationship in which a fiduciary duty does not exist." <u>Id.</u> at *10.

Thus, this Court CONCLUDES that Plaintiff's relationship with Defendants was not the type of relationship that gave rise to a fiduciary duty.[4]  This Court CONCLUDES that Plaintiff's claim for breach of fiduciary duty fails to state a plausible claim for relief, and it is not possible for Plaintiff to cure the defects in this claim by amendment.  The Motion is GRANTED insofar as the claim for breach of fiduciary duty is DISMISSED WITH PREJUDICE.

### E.   <u>Statute of Limitations</u>

Defendants argue that several of Plaintiff's claims should be dismissed with prejudice because they are barred by the statute of limitations.  This Court has considered the parties' exhibits in ruling on the issue of whether those claims are barred by the statute of limitations.  This Court will therefore

---

[4] In addition, Haw. Rev. Stat. § 514B-106(a) states that "officers and members of the board shall owe the association a fiduciary duty."  In interpreting this provision and a similar provision in Haw. Rev. Stat. Chapter 514A, the ICA "has held that only the individual directors of the board may be liable for breach of fiduciary duty, but not the association itself." <u>Baham</u>, 2014 WL 2761744, at *9 (citing <u>Ass'n of Apartment Owners of 2987 Kalakaua ex rel. its Bd. of Dirs. v. Dubois</u>, 190 P.3d 869 (Haw. Ct. App. 2008) (unpublished)).  Thus, even if Plaintiff could bring a claim for breach of fiduciary duty, it would be against the individual officers and members of the AOAO's Board of Directors ("the Board"), not against the AOAO itself.

apply the summary judgment standard to those claims.  <u>See</u>
<u>Daniels-Hall v. Nat'l Educ. Ass'n</u>, 629 F.3d 992, 998 (9th Cir.
2010) (stating that "generally the scope of review on a motion to
dismiss for failure to state a claim is limited to the
Complaint").

## III. <u>Evidence Before the Court</u>

The Kapalua Declaration states: "No house pets or other
animals shall be kept on any Lot or in any Apartment on a
Multiple Family Residential Lot or in a Condominium Unit except
where otherwise permitted by the Association Rules or a
Supplemental Declaration."  [Kapalua Decl. at 26, art. V,
§ 1(a)(6).]  In addition, the Golf Villas's House Rules ("House
Rules") states:

> "No house pets or other animals shall be kept on
> any Lot or in any Apartment on a Multiple Family
> Residential Lot or in a Condominium Unit except
> where otherwise permitted by the Association Rules
> or a Supplemental Declaration."  Page 26, Article
> V, Section 1, part (6), KRA CC&R's.

[Fleisch Decl., Exh. D (House Rules) at 3, § B-3.]  Thus,
Defendants assert that pets are not allowed at the Golf Villas.
[Mem. in Supp. of Motion at 3.]  Plaintiff's position is that
Haw. Rev. Stat. § 514B-156 requires that a policy prohibiting
owners from keeping pets must be in the association's bylaws, and
the Golf Villas bylaws ("Bylaws") did not have such a provision.
Plaintiff therefore argues the no-pets provision in the House
Rules is invalid, and the AOAO did not have the authority to

15

require him to give up Jake, even if Jake was a pet.  If this Court concludes that the no-pets provisions in the House Rules and the Kapalua Declaration alone are enforceable, Plaintiff argues that they must be read to include an exception for disabled persons.

Plaintiff states that, after purchasing his unit, he ran for a seat on the Board, and he publicly opposed a large renovation/remediation projection.  [Decl. of Vincent DeRosa ("Pltf. Decl."), filed 3/28/16 (dkt. no. 34), at ¶¶ 7-8.]  After doing so, he "began to be harassed, discriminated against, and retaliated against by the Board."  [Id. at ¶ 8.]  Plaintiff alleges that the AOAO enforced the no-pets provision against him in retaliation for his opposition to the renovation project.

Defendants present evidence that, in June 2011, the AOAO became aware that Plaintiff and his wife were keeping a dog at the Golf Villas.  The AOAO, through its general manager, informed Plaintiff that it was a violation of the governing documents and requested that he not keep the dog there.  The AOAO later learned that Plaintiff continued to keep a dog there.  [Fleisch Decl. at ¶¶ 16-18.]  The general manager sent Plaintiff a letter, dated June 23, 2011, regarding the no-pets policy ("6/23/11 AOAO Letter").  It stated, *inter alia*:

> If you have a pet on property it must be removed
> immediately.  Per the House Rules, this letter
> serves as your first warning.  If you have a pet
> on property and it is not removed by Friday

June 24, 2011 you may incur fines as defined in
the Kapalua Golf Villas House Rules.

[Fleisch Decl., Exh. E.]

Plaintiff responded in a letter dated June 24, 2011

("6/24/11 Plaintiff Letter").  The letter referred to

"Jake DeRosa" as his "pet" and "family member."  [Id., Exh. F.[5]]

He argued that the Bylaws and Declarations did not prohibit pets

on the property, and he pointed out that attempts by the Board to

restrict having pets on the property failed.  Plaintiff asserted

that other persons had their pets on the property.  He stated,

"[o]bviously and short of being service animals, which it is my

understanding these pets are not, if these owners have been

allowed to keep pets at the Villas I deserve the same right as a

member in good standing."  [Id.]  The 6/24/11 Plaintiff Letter

did not mention that Plaintiff has a disability, nor did it refer

to Jake as either a service dog or an ESA.

Plaintiff states that, when he purchased his unit in

the Golf Villas in October 2009, he had owned Jake for

approximately ten years.  Further, when he purchased his unit, he

was aware that other unit owners had pets.  According to

Plaintiff, those owners did not appear to be disabled and were

---

[5] The Court notes that Defendants' Exhibit F is not signed,
nor does the name "Vincent DeRosa" appear on it at all.
Plaintiff, however, does not dispute that Exhibit F is his
response to the 6/23/11 AOAO Letter.  [Defs.' CSOF at ¶ 13;
Pltf.'s CSOF at ¶ 13.]

allowed to keep their pets.  In addition, there were "doggy

stations" at the Kapalua Resort.  Thus, when he purchased his

unit, Plaintiff believed pets were allowed.  [Pltf. Decl. at

¶¶ 2-5.]  Plaintiff submits evidence that, by the time the

dispute over Jake started, the AOAO had already granted a waiver

of the purported no-pets policy to at least one other Golf Villas

owner.  [Pltf.'s CSOF, Exh. 4 (letter dated 4/19/10 to

Sandy Rogers from Joan Mayo, General Manager, offering a waiver

for Ms. Rogers's cat; Ms. Rogers accepted the conditions of the

waiver on 4/22/10).]

        Philip Lahne, Esq., counsel for the AOAO, sent

Plaintiff a letter, dated July 1, 2011, responding to his request

to keep Jake on the property ("7/1/11 AOAO Letter").  The letter

stated that, in light of the relevant provisions of the governing

documents, the Board had no authority to allow him to keep a dog

at the property, even if the Board were willing to do so – which

it was not.  [Fleisch Decl., Exh. G.]  The letter demanded that

Plaintiff

> immediately remove any and all dogs or other
> animals from The Golf Villas.  If you fail to do
> so, our office may be instructed to take legal
> action to compel your compliance with this demand.
> If such action is necessary, you will be liable
> for all of the Association's fees and costs
> incurred therein, including reasonable attorneys'
> fees, in accordance with § 514B-157, Hawai`i
> Revised Statutes.

[Id. at 2.]

18

Caroline Peters Belsom, Esq., responded to the 7/1/11 AOAO Letter on Plaintiff's behalf in a letter dated July 22, 2011 ("7/22/11 Plaintiff Letter"). [Fleisch Decl., Exh. H.] The letter stated that Jake is a certified ESA, registered with the NSAR.[6] The letter further stated that "[t]he emotional support Jake provides has been formally prescribed and deemed necessary to Mr. DeRosa who is referred to as the confirmed disabled handler. . . . Mr. DeRosa is also able to produce documentation from both his treating physician and treating therapist as to their prescriptions for Jake as a necessary ESA." [Id. at 2.] The letter asserted that Plaintiff has a disability as defined in the ADA and that Jake is a service dog as defined in the ADA. [Id.] It requested that the AOAO "cease and desist from all enforcement attempts under the subject house rule" and "grant him the reasonable accommodation required under the law." [Id. at 4.]

In response to the instant Motion, Plaintiff states that he has been receiving on-going treatment for alcohol addiction for many years, and that he is also being treated for an adjustment disorder and anxiety. He had previously been prescribed tranquilizers for his anxiety, but he no longer needed

---

[6] Plaintiff submitted a printout from the NSAR Registration Database showing that Jake DeRosa is an ESA and that Plaintiff is his handler. The date of Jake's registration is June 29, 2011. [Pltf.'s CSOF, Exh. 7.]

them after he obtained Jake.  [Pltf. Decl. at ¶¶ 10-12.]

Plaintiff acknowledges that he did not register Jake as an ESA

until June 29, 2011, but he states that Jake "provided [him] with

emotional support and . . . helped alleviate the symptoms of

[his] disabilities prior to being registered as an" ESA.  [Id. at

¶ 13.]  As evidence of his disability, Plaintiff submitted a

letter, dated November 15, 2015, addressed "To Whom It May

Concern" from Jerry Jay Snodgrass, M.S. LPC, of Agape

Professional Counseling Center in Oregon ("11/15/15 Snodgrass

Letter"), stating, in pertinent part:

> Vincent Derosa [sic] is under my care and I am
> currently treating him for a mental health
> disability recognized in the Diagnostic and
> Statistical Manual of Mental Disorders, Fifth
> Edition (DSM-5).  This disorder substantially
> limits at least one major life activity.
>
> As the primary treatment modality to address his
> psychological disability, I have prescribed
> Mr. Derosa to obtain or keep a dog to serve as an
> emotional support animal.  It is my professional
> opinion that the presence of this animal is a
> necessary treatment for the mental health of
> Mr. Derosa because its presence will mitigate the
> symptoms he is currently experiencing.

[Pltf.'s CSOF, Exh. 6.]

Mr. Lahne responded to the 7/22/11 Plaintiff Letter in

a letter dated August 1, 2011 ("8/1/11 AOAO Letter").  [Fleisch

Decl., Exh. I.]  It pointed out that the 7/22/11 Letter was the

first notice that the AOAO received that Plaintiff "was seeking

to keep his dog as anything but a pet."  [Id. at 2.]  Further, it

stated that the AOAO was required to "engage in an interactive
process with a person requesting an accommodation to determine
whether the accommodation can be made" and that the AOAO was
"entitled to sufficient information to establish the need for the
use of the assistance animal to afford the person equal use and
enjoyment of the housing." [Id.]  The AOAO therefore provided
Plaintiff with forms for him and his treating physician to fill
out to provide the information that the AOAO asserted it was
entitled to have in order to determine whether he was entitled to
a reasonable accommodation.  [Id. at 3.]  The 8/1/11 AOAO Letter
said that Plaintiff had fifteen days to provide the information
and that he would be allowed to keep his dog in his unit pending
the AOAO's receipt of the information.  The letter cautioned
Plaintiff that, if he failed to provide the information by the
deadline, the Board would assume that he was "unwilling or unable
to provide that information and he [would] be required to remove
the dog from the project." [Id.]

        Plaintiff responded with a letter, dated August 11,
2011, formally requesting an exception to the no-pets rule as a
reasonable accommodation pursuant to the Fair Housing Act ("FHA")
("8/11/11 Plaintiff Letter").[7] [Fleisch Decl., Exh. J.]
Plaintiff refused to complete the forms that the AOAO provided,

---

        [7] Plaintiff submitted the letter himself, but sent
Ms. Belsom a copy.  [8/1/11 Plaintiff Letter at D000870.]

arguing that they violated the FHA because they required

irrelevant information.[8]  [Id. at D000870.]  He provided, *inter*

*alia*, a "Letter of Prescription" from Stanley J. Rowett, M.A.,

M.F.T.,[9] stating:

> Vincent DeRosa is under my care for an Adjustment
> Disorder with Anxiety, DSM-IV 309.24.
>
> In my view his dog Jake has had a positive effect
> on many of Vincent's symptoms, helping Vincent to
> function on a day to day basis.
>
> Prescription: Jake, his current Emotional Support
> Animal.

[Id. at D000871.]  He also provided a form signed by Kari M.

Adams, M.D., authorizing Jake to be registered as a service dog

under the ADA, and a handwritten letter by Dr. Adams.  [Id. at

D000872-73.]  The letter stated that Plaintiff was under her care

for "emotional distress + anxiety," and that Jake "provides great

emotional support, the result of which is to alleviate

[Plaintiff's] symptoms."  [Id. at D000873.]  Defendants argue

that neither of the materials Plaintiff submitted with the

8/11/11 Plaintiff Letter established that "Plaintiff had a mental

impairment that substantially limited one or more of Plaintiff's

---

[8] In his declaration, Plaintiff states that the information the AOAO requested "included highly personal, sensitive, confidential, and inappropriate questions."  [Pltf. Decl. at ¶ 15.]  Plaintiff asserts that he provided the AOAO "with all the documentation that was necessary to support [his] request for reasonable accommodations."  [Id.]

[9] The Court assumes that M.F.T. stands for Marriage and Family Therapist.

major life activities or that the animal was necessary to mitigate such impacts or afford Plaintiff the ability to equally use and enjoy his unit." [Mem. in Supp. of Motion at 6.]

Mr. Lahne sent Ms. Belsom a letter, dated August 23, 2011, stating that the 8/11/11 Plaintiff Letter was insufficient and denying Plaintiff's request for an accommodation because Plaintiff failed to provide the required information ("8/23/11 AOAO Letter"). [Fleisch Decl., Exh. K.] The 8/23/11 AOAO Letter advised Plaintiff to remove Jack from the property immediately. [Id. at 2.]

On December 16, 2011, Plaintiff filed a discrimination complaint with the Hawai`i Civil Rights Commission ("HCRC"), pursuant to Haw. Rev. Stat. §§ 368-3, 515-3, and with HUD, pursuant to the FHA ("2011 HCRC Complaint").[10] [Pltf.'s CSOF, Exh. 13 (letter dated 1/19/12 to Plaintiff from the Executive Director of the HCRC regarding the 2011 HCRC Complaint).] Plaintiff states that, after he filed the 2011 HCRC Complaint, the AOAO "continued to target" him. [Pltf. Decl. at ¶ 19.] He states that it billed him for its legal fees associated with his request for an accommodation, and it applied his monthly maintenance fee payments to those fees, causing him to become

---

[10] The AOAO's counsel received the 2011 HCRC Complaint on or around January 13, 2012. [Defs.' CSOF, Decl. of David R. Major ("Major Motion Decl.") at ¶ 5.]

23

delinquent in his maintenance fee payments.[11]  He also refused to pay an AOAO remediation fee on May 24, 2012, and he was threatened with having his utilities turned off.[12]  According to Plaintiff, other unit owners in the same position were not treated in this manner.  [Id. at ¶¶ 20-22.]  In addition, he states that, on July 31, 2012, the AOAO "publicly listed [his] name as a 'delinquent owner'."  [Id. at ¶ 22.]

Plaintiff states that, because the AOAO refused to allow him to keep Jake, he had to move out of his unit and move back to California.  [Id. at ¶ 18.]  Further, because of the discriminatory and retaliatory threat to discontinue utilities, Plaintiff could not rent his unit.  He was ultimately forced to sell the unit in foreclosure.  [Id. at ¶ 27.]

On March 9, 2012, Plaintiff filed another complaint with the HCRC and HUD.  He amended it on April 5, 2012 and June 14, 2012 (collectively "2012 HCRC Complaint").  [Pltf.'s

---

[11] Certified sent Vincent and Maria DeRosa a letter, dated February 21, 2012, stating that they were delinquent in the amount of $2,351.85 ("2/21/12 Certified Letter").  The letter demanded immediate payment and stated that, if they failed to pay, water and cable service to the unit would be discontinued on April 21, 2012, and, if the unit was being rented, the AOAO would begin intercepting any rental revenue in thirty days.  [Pltf.'s CSOF, Exh. 14 at 1.]

[12] Certified sent the DeRosas a letter, dated May 24, 2012, stating that they were delinquent in the amount of $1,853.15 ("5/24/12 Certified Letter").  It contained language similar to the 2/21/12 Certified Letter regarding utilities and rental revenue.  [Pltf.'s CSOF, Exh. 15 at 1.]

CSOF, Exh. 18 (letter dated 11/7/12 to Plaintiff from the Executive Director of HCRC regarding the 2012 HCRC Complaint ("11/7/12 HCRC Letter")) at Exhs. 1, 1a, 1b).]  The 2012 HCRC Complaint alleged that Defendants "committed unlawful discrimination against [Plaintiff] on he basis of retaliation." [11/7/12 HCRC Letter at 1.]

       Plaintiff states that, on October 2, 2012, he received notice from the HCRC ("10/2/12 HCRC Letter") that he "met the definition of a 'disabled person' and the [AOAO] discriminated against me by refusing to allow reasonable accommodations for Jake." [Id. at ¶ 23.]  However, what the 10/2/12 HCRC Letter actually states is that, after reviewing the 2011 HCRC Complaint, "[i]t has been determined that there is reasonable cause to believe" that the AOAO "committed unlawful discriminatory practices against [Plaintiff] because of refusal to make a reasonable accommodation in rules, policies, practices or services, necessary for [his] equal opportunity to use and enjoy the housing, based on disability." [Pltf.'s CSOF, Exh. 17 (10/2/12 HCRC Letter) at 1.]  It informed him that "it has been found impracticable to issue a written final decision and order within one year of the date of the filing of" the 2011 HCRC Complaint.  [Id.[13]]

_____

[13] The Court notes that, although the letter states that a copy of Plaintiff's 2011 HCRC Complaint is attached as Exhibit 1,

(continued...)

Plaintiff states that, in the 11/7/12 HCRC Letter, the HCRC informed him that the AOAO retaliated against him after he "spoke[] out against the renovation project and threatened to turn off [his] utilities that prevented [him] from being able to rent [his] unit." [Pltf. Decl. at ¶ 23.] In fact, the 11/7/12 HCRC Letter states that "there is reasonable cause to believe" that Defendants "committed unlawful discriminatory practices against [Plaintiff] because of retaliatory conduct." [Pltf.'s CSOF, Exh. 18 (11/7/12 HCRC Letter at 1).] It informed him that "it has been found impracticable to issue a written final decision and order within one year of the date of the filing of" the 2012 HCRC Complaint. [Id.] Plaintiff states that the HCRC gave him a choice of the following actions: allow the HCRC to bring an action against the AOAO; sue the AOAO on his own behalf after it issued a right-to-sue letter; or take no further action. According to Plaintiff, the HCRC "encouraged" him to sue on his own behalf. [Pltf. Decl. at ¶ 25.] He therefore decided to withdraw his HCRC complaints and sue on his own behalf. [Id. at ¶ 26.] Plaintiff did not withdraw the 2011 HCRC Complaint until October 2014. [Major Motion Decl. at ¶ 5.] It is unclear when he withdrew the 2012 HCRC Complaint.

---

[13](...continued)
[10/2/12 HCRC Letter at 1,] the version of the letter that Plaintiff submitted as Exhibit 17 does not include the attachment. Thus, the Court cannot consider the specific allegations of Plaintiff's 2011 HCRC Complaint.

Plaintiff states that, on November 30, 2012, the AOAO filed a lien on his unit "for amounts supposedly owed for maintenance fees, late fees, legal fees, and the remediation fee," but, on December 18, 2012, it granted his request for a reasonable accommodation.[14]  [Pltf. Decl. at ¶¶ 28-29.]  By that time, however, Plaintiff had already moved out of state and the sale of his unit was in escrow.  He would have incurred additional losses and penalties if he cancelled the sale.  [Id. at ¶ 29.]  In spite of Plaintiff's requests and the HCRC's determinations, the AOAO refused to withdraw its demand that he pay the fees that it incurred related to his request for an accommodation and it refused to remove the lien.  Plaintiff paid the lien in full on February 4, 2013 from the proceeds of the sale of the unit.  [Id. at ¶¶ 30-31.]

Even after the sale of his unit, Plaintiff – who was represented by the Legal Aid Society of Hawai`i – attempted to settle his claims with the AOAO.  After these attempts failed, he decided to file this action.  [Id. at ¶ 32.]

---

[14] The memorandum in opposition states that the amount of the lien was $16,559.28, [Mem. in Opp. at 10,] but that amount is not included in Plaintiff's Declaration, and Plaintiff did not attach any documentation regarding the lien.

IV.  **Claims Reviewed under Summary Judgment Standard**

A.  **Time-Barred Claims**

Plaintiff's intentional infliction of emotional distress ("IIED"), negligent infliction of emotional distress ("NIED"), and negligence claims are subject to a two-year statute of limitations.  See, e.g., Carroll v. Cty. of Maui, Civil No. 13-00066 DKW-KSC, 2015 WL 1470732, at *6 (D. Hawai`i Mar. 31, 2015) (concluding that the plaintiffs' IIED and negligence claims, inter alia, were subject to a two-year statute of limitations (citing Wheeler v. Hilo Med. Ctr., Inc., 2010 WL 1711993, at *11 (D. Haw. Apr. 27, 2010) ("Battery, IIED, false imprisonment, and NIED are all tort claims to recover compensation for damage or injury.  As a result, these claims are subject to the two-year statute of limitations in HRS § 657-7[.]")))[15]  Plaintiff's gross negligence claim is subject to the same two-year statute of limitations.  See Faaita v. Liang, Civil No. 07-00601 LEK, 2009 WL 3124765, at *4 (D. Hawai`i Sept. 29, 2009).  This Court agrees with Defendants that, to the extent that the Complaint alleges a claim for violation of Haw. Rev. Stat. § 514B-105, the claim should be construed as a negligence-based claim.  Thus, that claim is also subject to the

---

[15] Section 657-7 states: "Actions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after, except as provided in section 657-13."  The exceptions listed in § 657-13 do not apply in the instant case.

two-year statute of limitations.  This Court will refer to Plaintiff's NIED claim, negligence claim, gross negligence claim, and § 514B-105 claim collectively as "the Negligence Claims."

> This Court has stated that:
>
>> the "discovery rule" applies to the statute of limitations for IIED and NIED claims.  United States EEOC v. NCL Am., 535 F. Supp. 2d 1149, 1169-70 (D. Hawai`i 2008).  In that case, the district court stated:
>>
>>> [U]nder the discovery rule, a cause of action accrues when the plaintiff knew or should have known of the causal connection between the defendant's action and the damage done. While it is clear that [the defendant's] action in terminating the policy was known by [the p]laintffs (sic) in 1992, it is still unclear when [the p]laintiffs actually suffered emotional distress, and when they connected their distress with [the defendant's] actions.
>>
>> Id. at 1170 (alterations in original) (citation omitted).

Enriquez v. Countrywide Home Loans, FSB, 814 F. Supp. 2d 1042, 1069 (D. Hawai`i 2011) (alterations in Enriquez).  Plaintiff's negligence and gross negligence claims are also subject to the "discovery rule."  See Aana v. Pioneer Hi-Bred Int'l, Inc., 965 F. Supp. 2d 1157, 1179 (D. Hawai`i 2013).  By extension, the § 514B-105 claim – which this Court has construed as another negligence claim – is also subject to the discovery rule.

First, the statute of limitations on these claims was not tolled while Plaintiff's HCRC complaints were pending.  Cf. Hale v. Hawaii Publ'ns, Inc., 468 F. Supp. 2d 1210, 1232 (D.

Hawai`i 2006) (stating that "parallel avenues of relief are generally not tolled by a Title VII administrative remedy, even if the claims are based on the same facts and directed toward the same ends" (some citations omitted) (citing <u>Johnson v. Railway Express Agency</u>, 421 U.S. 454, 467, 95 S. Ct. 1716, 44 L. Ed. 2d 295 (1975); <u>Harris v. Alumax Mill Products, Inc.</u>, 897 F.2d 400, 404 (9th Cir. 1990))).

Plaintiff also argues that he is entitled to equitable tolling of the statute of limitations because of Defendants' purported efforts to settle this dispute without requiring him to file a civil suit.  The ICA has stated:

> "'Equitable tolling' is defined as '[t]he doctrine that the statute of limitations will not bar a claim if the plaintiff, despite diligent efforts, did not discover the injury until after the limitations period had expired.'" <u>Narmore v. Kawafuchi</u>, 112 Hawai`i 69, 75 n.15, 143 P.3d 1271, 1277 n.15 (2006) (quoting Black's Law Dictionary 579 (8th ed. 2004)) superseded bv [sic] statute on other grounds, HRS §§ 232-16, 17 (Supp. 2014).

> In order to toll a statute of limitations for a complaint filed after its expiration, a plaintiff must demonstrate "(1) that he . . . has been pursuing his right diligently, and (2) that some extraordinary circumstance stood in his way," <u>Felter v. Norton</u>[, 412] F. Supp. 2d 118, 126 (D.D.C. 2006) (citing <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 417, 125 S. ct. [sic] 1807, 1814, 161 L. Ed. 2d 669 (2005); <u>Zerilli-Edelcrlass v. N.Y. City Transit Auth.</u>, 333 F.3d 74, 80-81 (2d Cir. 2003)).  Extraordinary circumstances are circumstances that are beyond the control of the complainant and make it impossible to file a complaint within the statute of

limitations.  <u>Id.</u> (citing <u>United States v. Cicero</u>, 214 F.3d 199, 203 (D.C. Cir. 2000)).

<u>Office of Hawaiian Affairs v. State</u>, 110 Hawai`i 338, 360, 133 P.3d 767, 789 (2006).

<u>Reyes v. HSBC Bank USA, Nat'l Ass'n</u>, No. CAAP-12-0000507, 2015 WL 3476371, at *6 (Hawai`i Ct. App. May 29, 2015) (some alterations in <u>Reyes</u>).

Even assuming that Plaintiff was diligently pursuing his rights during the attempted settlement negotiations, Defendants' participation in such negotiations did not create circumstances beyond Plaintiff's control that "ma[d]e it impossible to file a complaint within the statute of limitations."  This Court therefore CONCLUDES that equitable tolling does not apply in this case.

As previously noted, the 8/23/11 AOAO Letter informed Plaintiff that the AOAO had denied his request for an accommodation to allow him to keep Jake.  To the extent that Plaintiff's IIED claim and his Negligence Claims are based upon the denial of his request for an accommodation, this Court CONCLUDES that those claims accrued when Plaintiff received the 8/23/11 AOAO Letter.  Thus, this Court CONCLUDES that those portions of Plaintiff's IIED claim and his Negligence claims are time-barred because Plaintiff failed to bring those claims within two years after receiving the letter.

31

Plaintiff's position is that Defendants' discriminatory and retaliatory acts continued after the denial of his request for accommodation, including, *inter alia*, the attempt to collect attorneys' fees associated with his request for an accommodation, the threats to discontinue utilities to his unit, publicly identifying him as a delinquent owner, and placing a lien on his unit. He argues that:

> After paying the full amount of the lien, Plaintiff continued to attempt to resolve his dispute with the Association through settlement. Defendants initially indicated a willingness to attempt to settle the matter. When attempts at settlement proved unsuccessful, Plaintiff initiated the current action. Plaintiff's complaint was filed on January 22, 2015, within the two years of Defendants' final discriminatory act.

[Mem. in Opp. at 27 (emphasis omitted).] According to Plaintiff, he paid the lien in full on February 4, 2013, [Pltf. Decl. at ¶ 31,] and he argues that he filed this action within two years of that time. However, the AOAO filed the lien on November 30, 2012. [Id. at ¶ 28.] This Court CONCLUDES that, to the extent that Plaintiff's IIED claim and the Negligence Claims are based upon the allegedly illegal lien, the claims accrued as soon as Plaintiff had notice of the lien, which presumably occurred around November 30, 2012. Thus, those portions of the claims are time-barred because Plaintiff did not bring the claims within two years of that date.

Although it is not entirely clear, it appears that Plaintiff argues that the failure of the settlement discussions with Defendants was the final discriminatory act that the IIED claim and the Negligence Claims are based upon.  Even assuming that Plaintiff is making such an argument, this Court cannot consider claims based on discrimination in the attempted settlement process because Plaintiff did not allege such claims in the Complaint.

This Court concludes that the last act of alleged discrimination and/or retaliation that Plaintiff relies upon in his IIED claim and his Negligence Claims is the filing of the lien, and therefore he does not allege any allegedly unlawful acts within the two-year period before the filing of the Complaint.  This Court therefore CONCLUDES that those claims are time-barred.  This Court GRANTS Defendants' Motion insofar it GRANTS summary judgment in favor of Defendants as to the following claims: IIED, NIED, negligence, gross negligence, and violation of § 514B-105.

**B.**   **Racketeering**

Haw. Rev. Stat. § 842-8(c) allows an injured party to bring a civil racketeering action.  It states: "Any person injured in the person's business or property by reason of a violation of this chapter may sue therefor in any appropriate court and shall recover the damages the person sustains and the

cost of the suit, including a reasonable attorney's fee." Hawai`i courts look to federal Racketeer Influenced and Corrupt Organizations ("RICO") statutes in interpreting Chapter 842. See, e.g., State v. Bates, 84 Hawai`i 211, 222, 933 P.2d 48, 59 (1997) ("Insofar as this case involves one of first impression, and because HRS § 842-2 incorporated provisions of 18 U.S.C. § 1962, we look to the federal courts for guidance in cases interpreting the phrase 'associated with any enterprise' under constitutional 'void for vagueness' challenges.").  The Hawai`i Supreme Court has stated: "To maintain a civil RICO claim based upon 18 U.S.C. § 1962(c) (1994), a plaintiff must prove the following elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  TSA Int'l Ltd. v. Shimizu Corp., 92 Hawai`i 243, 263, 990 P.2d 713, 733 (1999) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985)).  For Chapter 842 purposes:

> "Racketeering activity" means any act or threat involving but not limited to murder, kidnapping, gambling, criminal property damage, robbery, bribery, extortion, labor trafficking, theft, or prostitution, or any dealing in narcotic or other dangerous drugs that is chargeable as a crime under state law and punishable by imprisonment for more than one year.

Haw. Rev. Stat. § 842-1.

Plaintiff argues that Defendants' actions constituted extortion, as defined in Haw. Rev. Stat. § 707-765.  Viewing the

current record in the light most favorable to Plaintiff,[16]

Defendants' actions could be found to have: substantially harmed

Plaintiff's health, financial condition, and/or reputation; or

created a disincentive for Plaintiff to take public positions

against the AOAO – such as his opposition to the remediation

project.  See Haw. Rev. Stat. § 707-764(1)(l),(2).  However, that

alone is not enough to prove a racketeering claim based on

extortion.  Section 707-764 states, in pertinent part:

> A person commits extortion if the person does any
> of the following:
>
> (1)  Obtains, or exerts control over, the
> property, labor, or services of another **with
> intent to deprive another of property**, labor, or
> services by threatening by word or conduct to:
>
>> . . . .
>>
>> (l)  Do any other act that **would not in
>> itself substantially benefit the defendant**
>> but that is calculated to harm substantially
>> some person with respect to the threatened
>> person's health, safety, business, calling,
>> career, financial condition, reputation, or
>> personal relationships;
>>
>> (2)  **Intentionally compels or induces another
>> person** to engage in conduct from which another has
>> a legal right to abstain or to abstain from
>> conduct in which another has a legal right to
>> engage by threatening by word or conduct to do any

---

[16] "We review a grant of summary judgment de novo and must
determine, viewing the facts in the light most favorable to the
nonmoving party, whether there are any genuine issues of material
fact and whether the district court correctly applied the
relevant substantive law."  Crowley v. Bannister, 734 F.3d 967,
976 (9th Cir. 2013) (citations and quotation marks omitted).

of the actions set forth in paragraph (1)(a)
through (l) . . . .

(Emphases added.)

Even if there is sufficient evidence to create a
genuine issue of fact as to whether Defendants substantially
harmed Plaintiff's health, financial condition, and/or
reputation, Plaintiff's civil racketeering claim based on alleged
extortion also requires that Defendants obtained or exerted
control of Plaintiff's property **with the intent** to deprive him of
property by threatening word or conduct.  § 707-764(1)(l).
Plaintiff has not presented any evidence that would create a
genuine issue of fact for trial as to the intent requirement.
Further, § 707-764(1)(l) also requires that Defendants' alleged
acts of extortion did not, in themselves, benefit Defendants.
That is not the case here.  Defendants' attempts to enforce the
no-pets provision in the Kapalua Declaration and the House Rules
did have an independent benefit to them, and the AOAO informed
Plaintiff that it was making similar demands of owner unit owners
known to be keeping animals in the Golf Villas.  See 8/1/11 AOAO
Letter at 4 ("[I]n response to your unequal enforcement claims,
the Association has demanded that all persons keeping animals in
the Project of which it is aware provide the Board with the same
information as is being requested from Mr. DeRosa. . . .  [T]hose
persons will be required to complete the same forms and
appropriate action will be taken as to any owners or occupants

36

who fail or refuse to do so or whose disability and need for an assistance animal is not established to the Board's satisfaction.").

As to § 707-764(2), even if there is sufficient evidence to create a genuine issue of fact as to whether Defendants' created a disincentive for Plaintiff to publicly oppose the AOAO's positions, Plaintiff's racketeering claim also requires that Defendants **intentionally** induced him not to speak out against it.  As stated above, Plaintiff has not presented any evidence that would create a genuine issue of fact for trial as to the intent requirement.

The gravamen of this case is the parties' different positions on the issue of whether the no-pets provision in the Kapalua Declaration and the House Rules is enforceable.  While the enforcement of the provision may have had unfortunate, and even harmful, effects on Plaintiff, that alone does not turn the disputed enforcement into racketeering.  Plaintiff has suspicions that Defendants had improper motives for enforcing the no-pets provision against him, but he has not presented evidence to support his suspicions.  His declaration states, "[a]fter speaking out against the large-scale renovation project, I began to be harassed, discriminated against, and retaliated against by the Board." [Pltf. Decl. at ¶ 8.]  However, "a 'conclusory, self-serving affidavit' that lacks detailed facts and supporting

37

evidence may not create a genuine issue of material fact."

Debeikes v. Hawaiian Airlines, Inc., Civil No. 13-00504 ACK-RLP,

2015 WL 6555404, at *9 n.14 (D. Hawai`i Oct. 28, 2015) (quoting

F.T.C. v. Neovi, Inc., 604 F.3d 1150, 1159 (9th Cir. 2010)).

      This Court therefore FINDS that Plaintiff has not

presented sufficient evidence to create a triable issue of fact

as to the intent requirement for his racketeering claim.  This

Court CONCLUDES that Defendants are entitled to judgment as a

matter of law as to Plaintiff's racketeering claim and GRANTS the

Motion as to that claim.

### C.  Breach of Contract

      Plaintiff argues that the Golf Villas governing

documents constitute a contract between him and the AOAO and that

Defendants breached that contract when they enforced the no-pets

provision against him.  He contends that Haw. Rev. Stat. § 514B-

156 requires that a condominium's no-pets provision be in the

project's bylaws.  Thus, because the Golf Villas Bylaws do not

prohibit pets, the no-pets provisions in the Kapalua Declaration

and House Rules are invalid, and Defendants had no authority to

enforce them against Plaintiff.  Section 514B-156 states, in

pertinent part:

> (a)  Any unit owner who keeps a pet in the owner's
> unit pursuant to a provision in the bylaws which
> allows owners to keep pets or in the absence of
> any provision in the bylaws to the contrary, upon
> the death of the animal, may replace the animal
> with another and continue to do so for as long as

the owner continues to reside in the owner's unit or another unit subject to the same bylaws.

(b)  Any unit owner who is keeping a pet pursuant to subsection (a), as of the effective date of an amendment to the bylaws which prohibits owners from keeping pets in their units, shall not be subject to the prohibition but shall be entitled to keep the pet and acquire new pets as provided in subsection (a).

(c)  The bylaws may include reasonable restrictions or prohibitions against excessive noise or other problems caused by pets on the property and the running of pets at large in the common areas of the property. . . .

(d)  Whenever the bylaws do not prohibit unit owners from keeping animals as pets in their units, the bylaws shall not prohibit the tenants of the unit owners from keeping pets in the units rented or leased from the owners . . . .

The bylaws may allow each owner or tenant to keep only one pet in the unit.

(e)  Any amendments to the bylaws that provide for exceptions to pet restrictions or prohibitions for preexisting circumstances shall apply equally to unit owners and tenants.

Haw. Rev. Stat. § 514B-156(a)-(e).  Defendants argue that:

1) § 514B-156 does not prohibit the enforcement of no-pet

provisions that appear in documents other than the bylaws; and

2) even if it does, § 514B-156 does not apply to the Golf Villas

because its governing documents were created long before the

enactment of Chapter 514B.

This Court is not aware of any case law regarding

§ 514B-156.  However, one commentary has taken the position that,

"because pet restrictions affect the use of the units, the house

rules can prohibit pets only if the bylaws already prohibit pets, or if they are amended by the owners to prohibit pets." Gwen Bratton & Arlette Harada, An Update on Condominium Law Since the 2006 Recodification, HAW. B.J., Sept. 2015, at 5 & n.17 (citing Haw. Rev. Stat. § 514B-156(a) (2008)).  As previously noted, in the absence of a governing state law decision, this Court must predict how the Hawai`i Supreme Court would decide the issue.  See Evanston Ins. Co. v. Nagano, 891 F. Supp. 2d 1179, 1189 (D. Hawai`i 2012) (citing Trishan Air, Inc. v. Fed. Ins. Co., 635 F.3d 422, 427 (9th Cir. 2011)).  The issue of whether the Hawai`i Supreme Court would hold that a no-pets provision in a condominium's house rules (or declarations) is invalid without a corresponding provision in the bylaws has not been sufficiently addressed by the parties.

In addition, as to Defendants' argument that § 514B-156 does not apply because the Golf Villas's governing documents were created long before the enactment of Chapter 514B, Haw. Rev. Stat. § 514B-22 states, in pertinent part:

> Sections 514B-4, 514B-5, 514B-35, 514B-41(c), 514B-46, 514B-72, and part VI, and section 514B-3 to the extent definitions are necessary in construing any of those provisions, and all amendments thereto, apply to all condominiums created in this State before July 1, 2006; provided that those sections:
>
> > (1) Shall apply only with respect to events and circumstances occurring on or after July 1, 2006; and

> (2) Shall not invalidate existing provisions of the declaration, bylaws, condominium map, or other constituent documents of those condominiums if to do so would invalidate the reserved rights of a developer or be an unreasonable impairment of contract.

Section 514B-156 is within Part VI, and the events at issue in this case occurred after July 1, 2006.  Thus, § 514B-156 applies, invalidating the no-pets provision in the Kapalua Declaration and the House Rules, unless to do so would: 1) invalidate the developer's reserved rights; or 2) "be an unreasonable impairment of contract."  The parties have not submitted any evidence in connection with the instant Motion regarding those two issues, and this Court FINDS that there are genuine issues of fact as to the applicability of § 514B-22(2).

In light of the unresolved legal issues regarding § 514B-156 and the factual issues regarding § 514B-22(2), this Court DENIES Defendants' Motion as to Plaintiff's breach of contract claim.

### D.  **Haw. Rev. Stat. § 514B-9 Claim**

Section 514B-9 states: "Every contract or duty governed by this chapter imposes an obligation of good faith in its performance or enforcement."  Plaintiff has not cited, nor is this Court aware of, any case in which the Hawai`i Supreme Court has recognized that an apartment owner may bring a claim against the owners' association for violation of § 514B-9.  Thus, it is

41

unclear whether violation of § 514B-9 is a cognizable claim in the first instance.

Even assuming, *arguendo*, that the claim is cognizable, the existing record does not support it.  The House Rules provide:

> SECTION F - ENFORCEMENT OF HOUSE RULES
>
> F-1  To aid the General Manager in enforcement of the house rules, the Board of Directors has established the following schedule of fines.
>
> F-2  Schedule of fines:
>
> First Offense   - Verbal warning that a particular house rules is being violated.
>
> Second Offense - Written warning and/or notice with copy to the Board of Directors.
>
> Third Offense  - $100 fine with written notice.
>
> Fourth Offense - $500 fine and a lien placed against the apartment, plus lien costs, attorney fees, etc. with 8% compounded interest accruing after 30 days from lien date.
>
> Kapalua Resort Association (KRA) and the State of Hawaii (Chapter 514-A) has a set of rules and regulations, which when in conflict or are more encompassing, will take precedent over these house rules.

[Fleisch Decl., Exh. D (House Rules) at 6 (emphasis omitted).]

Thus, assuming that the no-pets provision in the House Rules was valid, Defendants were entitled to enforce the provision through

warnings, fines, a lien on Plaintiff's unit, attorneys' fees, and interest. Further, the 7/1/11 AOAO Letter expressly notified Plaintiff that, if it became necessary for the AOAO to take legal action to compel his compliance with the no-pets provision, he would be liable to the AOAO the fees and costs it incurred in that action – including reasonable attorneys' fees – pursuant to Haw. Rev. Stat. § 514B-157. [Id., Exh. G (7/1/11 AOAO Letter) at 2.]

As previously noted, although Plaintiff has suspicions that Defendants had improper motives for enforcing the no-pets provision against him, he has not presented any evidence to support his position. See supra Section IV.B. This Court FINDS that Plaintiff has not presented sufficient evidence to create a triable issue of fact as to his claim that Defendants acted in bad faith in enforcing the no-pets provision. This Court CONCLUDES that Defendants are entitled to judgment as a matter of law as to Plaintiffs § 514B-9 claim and GRANTS the Motion as to that claim.

E.    **Failure to Accommodate**

Defendants also seek summary judgment as to Plaintiff's claims related to reasonable accommodation. This Court agrees with Defendants that portions of the Complaint suggest that Plaintiff is asserting claims based on Defendants' alleged failure to grant him a reasonable accommodation for his

43

disability, in violation of state and federal law.  However, at the hearing on the Motion, Plaintiff's counsel confirmed that Plaintiff is not bringing such claims in this case.  This Court therefore does not construe Plaintiff's Complaint as alleging a failure to accommodate claim under any authority.  To the extent that Defendants' Motion argues that they are entitled to summary judgment on Plaintiff's failure to accommodate claims, this Court does not need to address those arguments.

F.   **Haw. Rev. Stat. § 515-16 and Haw. Admin. R. §§ 12-46-301, 12-46-310**

Finally, this Court notes that, in addition to alleging violations of Haw. Rev. Stat. §§ 514B-9 and 514B-105, the Complaint also alleges violations of Haw. Rev. Stat. § 515-16(1) and (6) and Haw. Admin. R. §§ 12-46-301, 12-46-310(1) and (6). [Complaint at ¶ 29.]  Although Defendants' Motion seeks the entry of judgment on all of Plaintiff's claims, [Motion at 2,] Defendants do not make any specific argument regarding the alleged violations of § 515-16(1) and (6), § 12-46-301, or § 12-46-310(1) and (6).[17]  Haw. Rev. Stat. § 515-16 states, in pertinent part:

---

[17] The only references to these provisions in the Motion are in two quotations to the Complaint.  [Mem. in Supp. of Motion at 1, 7.]  There is no substantive discussion of those provisions.

44

It is a discriminatory practice for a person, or
for two or more persons to conspire:

> (1)  To retaliate, threaten, or discriminate
> against a person because of the exercise or
> enjoyment of any right granted or protected
> by this chapter, or because the person has
> opposed a discriminatory practice, or because
> the person has made a charge, filed a
> complaint, testified, assisted, or
> participated in an investigation, proceeding,
> or hearing under this chapter; [or]
>
> . . . . .
>
> (6)  To threaten, intimidate or interfere
> with persons in their enjoyment of a housing
> accommodation because of the race, sex,
> including gender identity or expression,
> sexual orientation, color, religion, marital
> status, familial status, ancestry,
> disability, age, or human immunodeficiency
> virus infection of the persons, or of
> visitors or associates of the persons[.]

First, this Court does not construe the Complaint's allegation of

a violation of § 515-16(6) as an affirmative claim for relief

because Plaintiff has confirmed that he is not bringing any

claims based on the denial of a reasonable accommodation.

Second, Haw. Admin. R. 12-46-301 and 12-46-310 are part of the

implementing regulations for § 515-16.  See § 12-46-301 ("The

purpose of this subchapter is to implement laws prohibiting

discrimination in real property transactions[.]").  This Court

therefore does not construe the Complaint's allegations of

violations of § 12-46-301 and § 12-46-310(1) and (6) as

affirmative claims for relief.  This Court does construe the

Complaint as alleging an affirmative claim for relief based on a

45

violation of § 515-16(1).  However, insofar as Defendants' Motion did not set forth any specific argument regarding Plaintiff's § 515-16(1) claim, this Court cannot construe Defendants' Motion as seeking summary judgment on that claim.  This Court makes no findings or conclusions at this time regarding the merits of Plaintiffs' § 515-16(1) claim.

## CONCLUSION

On the basis of the foregoing, Defendants' Motion for Summary Judgment, filed March 9, 2016, is HEREBY GRANTED IN PART AND DENIED IN PART.  The Motion is GRANTED insofar as:

-Plaintiff's bad faith claim, prima facie tort claim, selective enforcement of governing documents claim, and breach of fiduciary duty claim are DISMISSED WITH PREJUDICE; and

-this Court GRANTS summary judgment in favor of Defendants as to Plaintiff's intentional infliction of emotional distress claim, negligent infliction of emotional distress claim, negligence claim, gross negligence claim, Haw. Rev. Stat. § 514B-105 claim, racketeering claim, and Haw. Rev. Stat. § 514B-9 claim.

The Motion is DENIED as to Plaintiff's breach of contract claim.

Although the dispositive motions deadline has passed, see Rule 16 Scheduling Order, filed 8/3/15 (dkt. no. 23), at ¶ 7, this Court GRANTS the parties leave to file motions for summary judgment regarding the remaining breach of contract claim and the Haw. Rev. Stat. § 515-16(1) claim, which was not addressed in the instant Motion.  Any party wishing to file a motion for summary judgment regarding one or both of those claims must do so by **May 31, 2016.**

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, August 31, 2016.



    /s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**VINCENT DEROSA VS. THE ASSOCIATION OF APARTMENT OWNERS OF THE GOLF VILLAS, ET AL; CIVIL 15-00165 LEK-KSC; AMENDED ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**